UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES for use and benefit of ) <br> THORLEIF LARSEN & SON, INC., and ) <br> THORLEIF LARSEN & SON, INC., ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> UNITED STATES FIDELITY AND ) <br> GUARANTY CORPORATION, and ) <br> HUNT CONSTRUCTION GROUP, INC., ) <br> ) <br>     Defendant. ) | CIVIL NO. 2:01cv597 |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants, Hunt Construction Group, Inc. ("Hunt") and United States Fidelity and Guaranty Corporation ("USF&G"), on September 27, 2002. After extended continuances in this case, the plaintiff, Thorleif Larsen & Son, Inc. ("Thorleif"), filed its response on July 6, 2005. The defendants filed their reply on July 25, 2005.

Also before the court is a "Motion to Strike the Affidavit of Robert Wooten and all References Thereto in Plaintiff's [sic] Reply Brief or in the Alternative for Leave to File a Surreply to Defendants' Reply Brief Filed in Support of Their Motion for Summary Judgment" filed by Thorleif on August 10, 2005. Hunt responded to the motion on August 11, 2005, to which Thorleif replied on August 12, 2005.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

     Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323.  The non-moving party may oppose the

2

motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988).  The non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  Id.  A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252.  Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate.  Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

## Discussion

Hunt is an Indiana corporation with its principal place of business in Indianapolis, Indiana.  Thorleif is an Illinois corporation with an office located in Itasca, Illinois.  On or about May 28, 1997, Thorleif entered into a Subcontract Agreement with Hunt whereby Thorleif agreed to furnish certain labor, materials and equipment required for the construction of a United States Courthouse located in Hammond, Indiana.

Pursuant to Article 1 of Form 19A of the Subcontract, Hunt was the "Contractor" under the Subcontract, and Thorleif was the "Subcontractor."  Pursuant to Article 3(C)(4) of Form 19B of the Subcontract, Hunt was required to make progress payments to Thorleif for work performed under the Subcontract, and with each requested progress payment, Thorleif was required to submit sworn statements and waivers of lien covering all portions of the work for which Thorleif was requesting payment.  Consistent with this provision, after the Subcontract

was executed, Thorleif provided Hunt with numerous progress payment requests and Lien Waivers, and Hunt made numerous payments to Thorleif in accordance with the payment requests and Lien Waivers.

According to Hunt, the last Lien Waiver that Thorleif provided to Hunt pursuant to the Subcontract was dated August 7, 2000. Hunt states that consistent with the statements in the second full paragraph of that Lien Waiver, Hunt paid Thorleif $96,277.00 in satisfaction of Thorleif's Payment Application Number 17, bringing Hunt's total payments to Thorleif for the project through June 30, 2000 to $7,531,224.00.

Hunt claims that Thorleif failed to comply with certain construction deadlines established by the parties pursuant to the Subcontract. Hunt claims that the alleged failure caused damages to Hunt in the form of extended overhead, exposure to liquidated damages claims to General Services Administration ("GSA"), and certain costs and expenses. Hunt states that it notified Thorleif of the damages caused by the alleged inadequate performance, and the parties succeeded in negotiating a settlement of that dispute. That settlement, which Hunt characterizes as a mutual release of certain claims through June 1, 2000, was memorialized by the parties' Settlement Agreement, dated May 1, 2000.

Thorleif's complaint in this case seeks recovery under the Miller Act and Prompt Payment Act, and for an alleged breach of contract.[1] The complaint requests, $1,032,608.00,

---

[1] The Complaint, at paragraph 9, alleges that "Hunt owes Thorleif Larsen at least $1,032,608 for Thorleif Larsen's work." Paragraph 13 alleges that "Hunt may owe Thorleif Larsen additional amounts under deductive change orders numbers 6, 13, 14, 15, 16, 20, 21, 26, 27, 28, 46 and 47 totaling $263,372 which remain subject to Thorleif Larsen's review and protest. Paragraphs 21-23 allege that Hunt violated the Prompt Payment Act, 31 U.S.C. § 3905(b)(1), and breached the Subcontract by failing in one or more instances to pay Thorleif within 7 days after payment by the United States to Hunt under the Contract. Thorleif has

5

plus interest, against Hunt and USF&G.  The defendants claim that the Settlement Agreement and August 7, 2000 Lien Waiver bar most or all of Thorleif's claims in this case.

The first task in this case is to determine which state's law is applicable.  Hunt points out that Article 8 of Form 19B of the Subcontract states, "The Subcontract and all matters relating to validity, performance or interpretation shall be governed by and construed in accordance with the laws of the state defined as Contractor's [Hunt's] address in Article I" of Form 19A of the Subcontract.  Hunt's address contained in Article 1 of Form 19A is in Indianapolis, Indiana.  Thus, Hunt concludes that pursuant to the agreement of the parties, the Subcontract is to be governed by and construed in accordance with Indiana law.  Thorleif does not directly argue that Indiana law does not apply but does, however, rely on Illinois law in portions of its response brief.  As it is clear that Indiana law is applicable to this case, this court will apply only Indiana law.

Indiana law is clear that subcontractors are bound by lien waivers given in exchange for payment on a construction project.  Kern v. City of Lawrenceburg, 625 N.E.2d 1326 (Ind. App. 1993).  The disputes between the parties in this case center on exactly what claims were released by the language of the lien waivers and the Settlement Agreement.  Further, Thorleif raises the issue of whether consideration was paid for the waiver.  As the Indiana Courts have held, "liens can be waived but the waiver should be supported by consideration in order to be effective." Martin McAuliffe Mech. Contractor, Inc. v. Midwest Gas Storage, Inc., 685 N.E.2d 165, 173 (Ind. App. 1997).  Thorleif claims that although Hunt suggests that the $96,277.00 payment

---

claimed the right to recover interest on payments not timely made pursuant to the Prompt Payment Act, the Subcontract and the Miller Act.  Complaint at paragraphs 17, 24, 30.

referred to in the Lien Waiver was made "pursuant to" the Lien Waiver, the Lien Waiver itself recites that the payment had already been received by Thorleif before it executed the document. Thus Thorleif argues that it received nothing in exchange for the Lien Waiver, and it was already entitled to the money it requested in Payment Application Number 17. Thorleif further argues that the parties never discussed or agreed to a general release of Thorleif's claims against Hunt, meaning that there was no "bargain" between the parties for the execution of a general release.

It appears that Thorleif is attempting to take advantage of a scrivener's error. Mr. Wayne Kidd, on behalf of Thorleif, dated the Lien Waiver August 7, 2000. However, the notary public dated the document "8/7/01". Thorleif actually received payment pursuant to the release on August 31, 2000. (Minor Affidavit, Ex. A). A review of the Lien Waiver shows without a doubt that it was executed on August 7, 2000, as that date is referenced in the body of the document. Therefore, it is clear that the $96,277.00 payment was, in fact, made "pursuant to" the Lien Waiver, and sufficient consideration was given in exchange for the Lien Waiver.[2]

Thorleif next argues that even if the Lien Waiver was supported by consideration, it

---

[2] Thorleif, in its motion to strike affidavit, objects to Hunt's use of the Wooten Affidavit to bolster its position that the Lien Waiver contained a scrivener's error. As the error is plain on its face, the court has not relied on the Wooten Affidavit, and thus Thorleif's objection is moot. In this same motion, Thorleif objects to the Wall Affidavit which was filed on June 13, 2005, for basically the same reason that it objects to the Wooten Affidavit. As the Wall Affidavit is redundant of other affidavits on file, the court has not relied on the Wall Affidavit, and Thorleif's objection to this affidavit is also moot. Finally, Thorleif objects to Hunt's citation of new legal authority in its reply brief, referring to Hunt's citation to federal cases that have upheld its Lien Waiver. The basis of Thorleif's objection is that it has not been given an opportunity to discuss the cases. However, the cases were decided before Thorleif filed its response to the summary judgment motion. If Thorleif had wished to discuss the other Hunt cases, it was free to do so in its response brief. Hunt is not barred from citing the cases simply because Thorleif failed to do so. In any event, Thorleif's discussion of the cases would not change the cases themselves, which the court has read and has not found difficult to understand. Thus, a full round of briefing on the cases would not be beneficial. Accordingly, Thorleif's motion to strike will be denied.

would not operate to bar the claims asserted by Thorleif in this case.  Thorleif claims that the evidence shows that the parties intended the Lien Waiver to only reach the particular work for which payment was made.  Thorleif argues that the parties' course of dealing shows that Thorleif repeatedly provided partial lien waivers to Hunt relating only to labor and materials covered by the payment applications referenced therein.  Thorleif further argues that this was consistent with the custom and practice of the construction industry.

Under Indiana law, release agreements are to be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing.  Gonzalez v. Kokot, 314 F.3d 311 (7th Cir. 2002).  Normally, the intentions of the parties to a contract are to be determined from the four corners of the document.  Boswell Grain and Elevator, Inc. v. Kentland Elevator and Supply, Inc., 593 N.E.2d 1224 (Ind. App. 1992); Keithley's Auction Svc. v. Children of Jesse Wright, 579 N.E.2d 657 (Ind. App. 1991).  Thus, when a written contract is introduced into evidence, a court interpreting it will first attempt to determine the intent of the parties at the time the contract was made, as disclosed by the language used in the contract to express their rights and duties.  R.R. Donnelley & Sons, Co. v. Henry-Williams, Inc., 422 N.E.2d 353 (Ind. App. 1981); Rieth-Riley Const. Ct., Inc. v. Auto-Owners Mut. Ins. Co., 408 N.E.2d 640 (Ind. App. 1980).

The written instrument at issue must be ambiguous before extrinsic evidence will be admitted.  Sprague v. State, 181 N.E. 507 (Ind. 1932); Will s v. Gaff, 191 N.E. 2d 41 (Ind. 1963).  Where the terms of a contract are clear, the meaning of the contract is determined as a matter of law from the language of the contract.  Chicago Southshore & South Bend R.R. v. Itel Rail Corp., 658 N.E.2d 624 (Ind. App. 1995); Piskorowski v. Shell Oil Co., 403 N.E.2d 838

(Ind. App. 1980).

Where the terms of the instrument are susceptible of a clear and unambiguous construction, evidence of the intent of the parties extrinsic to the contract is inadmissible. <u>City of Evansville v. Old State Utility Corp.</u>, 550 N.E.2d 1339 (Ind. App. 1990). A court will resort to the application of the rules of contract construction and the receipt of extrinsic evidence only after a careful study of the entire contract itself has failed to make clear its meaning. <u>Evansville-Vanderburgh School Corp. v. Moll</u>, 344 N.E.2d 831 (1976).

Hunt points out that the August 7, 2000 Lien Waiver clearly states that the total value of work that Thorleif had performed on the Project through June 30, 2000 was $7,752,630 and that Hunt had paid Thorleif $7,531,224 of that amount, thereby leaving only the $221,406 that Hunt was withholding as retainage. Further, in the Lien Waiver, Thorleif clearly acknowledged that the payments to it by Hunt were "in full accord and satisfaction", and Thorleif waived and released "any and all claims, rights or causes of action whatsoever" that it could have had against Hunt for work performed on or before June 30, 2000, other than the $221,406 retainage claim.

Hunt asserts that there is no ambiguity in the contract, and that the contract should be enforced as written. Hunt points out that since the time that it filed its Motion for Summary Judgment in this case on September 27, 2002, other federal courts have reviewed and upheld the waivers and releases of claims in the form of Lien Waiver at issue in this case. For example, in September, 2004, the United States District Court for the Middle District of Pennsylvania issued its ruling granting summary judgment to Hunt in the case <u>G.R. Sponaugle & Sons, Inc. v. Hunt Construction Group, Inc.</u>, 366 F. Supp. 2d (M.D. Pa. 2004). Further, the ruling in <u>Sponaugle</u> is supported by two additional federal court decisions upholding Hunt's form of Lien Waiver and

dismissing the claims against Hunt to the extent stated in the lien waivers at issue in those cases. See <u>Johnson Controls, Inc. v. Hunt Construction Group, Inc.</u>, 2004 WL 3323608 (E.D. Mich. August 13, 2004); <u>Hunt Construction Group, Inc. v. Construction Services, Inc.</u>, 375 F. Supp. 612 (E.D. Mich. 2005). Although the lien waivers and issues pertaining thereto were not identical to the issues in the present case, the decisions nevertheless support Hunt's argument that the lien waivers are unambiguous and enforceable as written, especially in light of controlling Indiana law.

Considering all of the foregoing, this court finds that in the August 7, 2000 Lien Waiver, Thorleif clearly represented that it had been paid for all of its work on the Project through June 30, 2000, except for the $221,406 that was being held as retainage. Further, in this same Lien Waiver, Thorleif clearly and unequivocally waived and released any and all claims that it could have had against Hunt for work performed on the Project through June 30, 2000, other than its $221,406 retainage claim.

Hunt further claims that the Settlement Agreement that was executed on May 1, 2000, bars certain of Thorleif's claims[3]. Hunt points out that the very first sentence of the Settlement Agreement states that the parties "mutually agree to settle all outstanding claims against each other with respect to damages for alleged delays in the performance of the Work since the commencement of the Work and through June 1, 2000." Thorleif, however, argues that it only

---

[3] Hunt states that the August 7, 2000 Lien Waiver, by itself, served to release all of the claims for which Hunt seeks summary judgment in this case. According to Hunt, the Settlement Agreement provides an independent basis for the dismissal of any claims that Thorleif may be asserting for: (a) alleged damages related to Project delays through June 1, 2000; (b) the Change Orders covered by the Settlement Agreement; and (c) interest due under the Miller Act for any payments withheld by Hunt through June 1, 2000.

10

relinquished its right to seek interest under the Miller Act on certain, specified withheld payments.  Thorleif recites paragraph 2 of the Settlement Agreement which states: "In further consideration herein, TLS agrees that it will not institute any proceedings under the Miller Act relative to its claims for interest due on payments withheld by HH&N."  Thorleif further points out that paragraph 5 of the Settlement Agreement states that the parties "acknowledge that this agreement contemplates only a resolution of those claims which are specifically set forth in this settlement agreement."  However, as Hunt points out, the Settlement Agreement specifically sets forth that the parties agreed to "settle all outstanding claims against each other with respect to damages for alleged delays ... through June 1, 2000."

It is clear that Thorleif's Miller Act claims fail to the extent that such claims are for interest due on payments withheld by Hunt through June 1, 2000, as such claims are barred by the express language of the Settlement Agreement.  Additionally, the Lien Waiver bars all claims that accrued on or before June 30, 2000. Accordingly, the defendants' motion for summary judgment will be granted as to any and all claims in this case that accrued on or before June 30, 2000, other than Thorleif's $221,406 retainage claim.

## Conclusion

On the basis of the foregoing, the defendants' motion for summary judgment is hereby GRANTED.  Further, the plaintiff's motion to strike is hereby DENIED AS MOOT.

 Entered: September 2, 2005.

s/ William C.  Lee<br>
William C. Lee, Judge<br>
United States District Court